**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**CIVIL ACTION NO. 10-cv-322**

**THERESA MHANNA**                                                  **PLAINTIFF**

**V.**

**AK STEEL CORPORATION**                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Pending are motions for summary judgment filed by defendant and pro se plaintiff. Docs. 89, 90. Defendant's motion will be granted and plaintiff's motion will be denied.[1] Plaintiff's objection to the testimony of Dr. Rutan, construed as a motion to strike the testimony of Dr. Rutan, will also be denied. Doc. 92.

**I. Factual and Procedural History**

During a lockout in 2006, defendant AK Steel Corporation hired contractors and temporary replacement workers to provide services typically performed by union members. One of the contractors used by defendant was IMAC, which plaintiff began working for in July 2006.

In March 2007, plaintiff applied to work directly for defendant. Included in the plaintiff's signed application for employment was a clause stating "I agree that any false or misleading statement in this application for employment or any additional forms signed by me in connection with my employment shall be sufficient cause for refusal or termination of employment." Doc. 88-2, p. 1820. After she received a conditional offer of employment, plaintiff was required to complete a post-offer, pre-employment medical questionnaire. On that questionnaire, which plaintiff signed on April 24, 2007, plaintiff checked boxes to indicate that

---

[1]All parties have consented to disposition by the magistrate judge pursuant to 28 U.S.C. §636(c).

she had not been seen by a physician for other than a routine physical examination in the last five years, and also checked boxes to indicate that she had not been treated for or consulted a healthcare provider for multiple sclerosis ("MS") or back pain. *Id.* at p. 1823-24.  Plaintiff also wrote "none" when asked what prescription drugs she had taken in the last five years. *Id.* at p. 1824.  In capital letters immediately above the signature line on the questionnaire was a clause stating "I certify that my answers are true and complete.  I understand that any misrepresentation (including omission of information) is sufficient cause for termination of my employment and/or rescission of my job offer." *Id.*  Plaintiff became a regular employee of defendant in June 2007, and, as the least senior employee of the Energy Department, was assigned to various jobs.  Doc. 88, p. 1738.

In December 2008, plaintiff was permitted to be off work for two weeks. *Id.* at p. 1740.  Upon her return plaintiff submitted a note from a chiropractor stating that she should be limited to a forty-hour workweek from December 22, 2008 until January 22, 2009.  Doc. 88-2, p. 1832.  Defendant honored that workweek limitation.  Doc. 88, p. 1752.

In February 2009, plaintiff went to defendant's medical department for her annual OSHA medical exam.  When the doctor asked about the 40-hour workweek restriction, plaintiff stated it would be "nice" to maintain that restriction. *Id.*  Plaintiff and the doctor also talked about the fact that plaintiff had been diagnosed with MS.  Plaintiff contends the doctor already knew about the diagnosis; the doctor avers in his declaration that he learned of plaintiff's MS diagnosis for the first time during the exam.  Doc. 89-2, p. 1896.  The doctor then checked defendant's records and "discovered that Mhanna had not disclosed this [MS diagnosis] on her pre-employment medical questionnaire." *Id.*

The doctor requested plaintiff's personal medical records and discovered that plaintiff "had been treated at least nine times in the two years before she submitted the application, had had two MRI's and had been prescribed medications, including a Myobloc injection, none of which had been disclosed." *Id.* at p. 1897. In accordance with his normal procedure the doctor reported the issue to defendant's labor relations group because he believed plaintiff had falsified her employment application materials. *Id.*

Jessica Morris, a senior labor relations representative for defendant, met with plaintiff and her union representative in March 2009 regarding plaintiff's alleged falsification of her medical questionnaire. According to Morris' declaration, plaintiff stated at the meeting that she did not disclose her MS on the application forms because she had not had symptoms for three years. Doc. 89-1, p. 1880. Morris believed that statement by plaintiff was false because plaintiff "had been diagnosed with MS in 2005, just two years before completing the form for AK Steel." *Id.* Morris then concluded that plaintiff had falsified her employment documents and, consequently, Morris suspended plaintiff for five days subject to discharge. *Id.* The union appealed on behalf of plaintiff but the discharge was upheld. *Id.*

Plaintiff filed this pro se action in May 2010. In her extremely terse complaint, plaintiff raises the following causes of action:

> 1. AK Steel Terminated my employment unjustly, unethically
> 2. AK Steel Interfered with unemployment by not Providing Full Documentation
> 3. AK Steel Slandered my reputation
> 4. AK Steel was aware of all medical conditions and used it [sic] to terminate me
> 5. In spite of 40hr/wk restriction place [sic] on me by company medical Doctor, AK Steel worked me numerous hours overtime
> 6. After returning from FMLA [leave], I was demoted with lower pay followed by termination[.]

Doc. 4, p. 17-18.

## II. Analysis

### A. Standard of Review

Summary judgment is proper only if the facts on file with the court demonstrate not only that no genuine issue of material fact remains to be resolved but also that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party may discharge its burden by "pointing out . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party cannot rest on its pleadings, but must identify specific facts that remain for the finder of fact at trial. *See id.* at 324. Although all inferences are drawn in favor of the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), the nonmoving party must present significant and probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether a genuine issue of material fact remains for a fact finder at trial. *Id.* at 249. The inquiry is whether the evidence presents a "sufficient disagreement to require submission [of the case] to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The court reviewing a summary judgment motion need not search the record in an effort to establish the lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the nonmoving party to present affirmative evidence to defeat a properly supported motion, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989), and to designate specific facts that are in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### B.  Only the Issues Set Forth in the Complaint Are Properly Before the Court

Plaintiff's motion for summary judgment refers to several purported issues which are not properly before the Court.  For example, plaintiff contends that she "had been harassed by [a] co-worker by poking at her underwear."  Doc. 90, p. 1909.  The Court has previously denied plaintiff's motion to amend her complaint to add six new causes of action, including a proposed sexual harassment claim.  Docs. 47, 52.  Nonetheless, as defendant notes in its response, plaintiff's motion for summary judgment discusses each of the six causes of action which plaintiff has never received permission to raise.  New causes of action may not properly be raised in a motion for summary judgment, even by a pro se plaintiff, so the only issues which are properly before the Court are the six causes of action contained in plaintiff's complaint.

### C.  Plaintiff Was Not Unlawfully Terminated

Plaintiff has not cited authority to support her contention that a cause of action exists for an unethical termination.  I will leniently construe her claim to be that she was unlawfully terminated.  Even with that generous construction of plaintiff's complaint, however, defendant is entitled to summary judgment.

Plaintiff contends she was improperly terminated because defendant's accusation that she falsified her employment application papers is false.  But during her deposition plaintiff testified that "there's a lot of things I filled out wrong on those [forms] and it–but it was never intentionally."  Doc. 88, p. 1760.  Later in her deposition plaintiff was asked if she had ever had back pain and she answered "[y]es, and I don't know why I answered 'no' on it.  I just didn't.  It–either way it goes, I wasn't feeling it at that time.  It's the only thing I can come up with."  *Id.* at p. 1768.

It is undisputed that the collective bargaining agreement under which plaintiff was employed provided for discharge for falsification of records, and the employment forms themselves similarly stated that any false answers would be grounds for discharge. Plaintiff has not offered anything to rebut Morris' averment in her declaration that defendant "has consistently terminated employees who are not honest or who lie or omit information either during the pre-employment process or during employment. I am aware of at least 10 other employees who have been terminated for falsification since 2007." Doc. 89-1, p. 1877.

Plaintiff has offered nothing to show that defendant's proffered reason for terminating her is a mere pretext. As defendant notes, "[p]laintiff's changing excuses for her falsification (that it was just a clerical error, or the font was too small, or she does not believe she has MS, or maybe she told AK before she was hired that she had MS) do nothing to negate the simple fact that a number of her statements were false."[2] Doc. 91, p. 1994. Defendant is entitled to summary judgment on plaintiff's construed unlawful termination claim. *See, e.g., Robinson v. C&D Technologies, Inc.*, 2008 WL 4239014 (E.D.Wis. Sep. 15, 2008) (holding defendant-employer entitled to summary judgment on ADA claim because it was uncontroverted that plaintiff falsified employment forms and defendant had similarly fired other employees who had falsified records).

### D. Defendant Did Not Unlawfully Interfere with Plaintiff's Unemployment Claim

After her termination, plaintiff sought unemployment benefits. The Butler County Court of Common Pleas and the Ohio Court of Appeals, however, affirmed the Ohio Unemployment

---

[2]Plaintiff ambiguously contends that she "maybe" told someone at AK Steel about her MS in 2006. Doc. 90, p. 1905. Such an ambiguous statement is insufficient to create a genuine issue of material fact, especially since plaintiff herself has admitted that there are incorrect statements on her application documents.

6

Review Commission's decision to deny plaintiff's request for benefits. Doc. 89-1, p. 1884-1894.

Plaintiff's unemployment discrimination claim is so vague and generic that it is exceedingly difficult to discern its specific parameters. For example, plaintiff contends she "requested information to be produced and it never was. If plaintiff would have known that there was paper work given to unemployment [sic] she could have argued her case differently. If Discovery had been produced it would of [sic] shown disclosure of medical issue at earlier time and this predicament wouldn't of [sic] been held against Plaintiff[.]" Doc. 90, p. 1906. It is unclear whether plaintiff has stated a legally cognizable claim. Even if the Court leniently assumes, solely for purposes of argument, that plaintiff has sufficiently set forth a legally cognizable claim, defendant is entitled to summary judgment as plaintiff has pointed to no specific improprieties committed by defendant which entitle plaintiff to relief.

Plaintiff cites to no statutes or cases to buttress her argument. Indeed, plaintiff does not specify which document(s) defendant failed to provide to her.[3] Moreover, any objections to evidence offered by defendant during the unemployment benefits review process should have been lodged to the court or administrative body reviewing plaintiff's claim for unemployment benefits. Both plaintiff and defendant were entitled to vigorously participate in each step of the unemployment review process, including any appeals, and there is no indication in the record that defendant acted in a manner entitling plaintiff to relief.

### E. Defendant Did Not Slander Plaintiff

Plaintiff's complaint merely alleges, without elaboration, that she was slandered by

---

[3] Attached to plaintiff's motion for summary judgment are several exhibits, which plaintiff labeled "evidence exhibits." Doc. 90-1, p. 1924-1991. Tellingly, the section related to plaintiff's unemployment interference claim contains only a heading with no supporting documentation. *Id.* at p. 1948.

defendant. At her deposition, plaintiff stated that defendant slandered her "[b]y firing me and–and accused me of falsifying my records when I didn't." Doc. 88, p. 1764. When asked if defendant had told anyone else plaintiff had been fired for falsifying records, plaintiff answered "I wouldn't know that" and, when asked again similarly answered "I have no clue." *Id.*

Under Ohio law, an action for slander must be committed within one year after the cause of action accrued. Ohio Revised Code ("ORC") 2305.11(A). Plaintiff was terminated in March 2009 and did not file this action until May 2010, so the slander claim appears to be untimely.

Even if the claim is addressed on the merits, however, defendant is entitled to summary judgment. Truth is a complete defense to a slander charge under Ohio law. *See* ORC 2739.02. As previously discussed, the record amply supports defendant's consistent contention that plaintiff was terminated for making inaccurate statements on her employment application documents. In addition, "[u]nder Ohio law a plaintiff alleging defamation, whether by libel or slander, must demonstrate that a defendant published defamatory and actionable statements to a third person who understood the defamatory nature of the publication." *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 747 (N.D. Ohio 2008). In addition to plaintiff not having demonstrated that defendant made a false statement, plaintiff has not shown how, when or to whom defendant published any purportedly defamatory statement. Accordingly, defendant is entitled to summary judgment.

**F. Plaintiff Was Not Improperly Terminated Due to Her Medical Condition(s)**

As with other claims, the precise contours of plaintiff's claim that defendant "was aware of all medical conditions and used it [sic] to terminate" her is unclear. Doc. 4, p. 17. In her motion for summary judgment, plaintiff seems to argue that defendant knew that plaintiff had

been diagnosed with MS prior to the date plaintiff was hired.  To support that contention plaintiff principally relies upon a handwritten medical record from Patricia Burge, a nurse who works in defendant's medical department.  The date on that record was originally written as 2/18/06, but the 06 was crossed out and 09 was written above it.  Within that record is a statement that "EE [employee] stated she has MS and want[s] restrictions (40 hours per week) revived." Doc. 90-1, p. 1978.

To reiterate, even if it can be assumed (solely for purposes of argument) that plaintiff orally told the nurse about the MS diagnosis in 2006, it remains undisputed that plaintiff failed to list having been diagnosed with MS on her employment application documents.  Equally importantly, the record will not support any assumption that plaintiff did tell Nurse Burge of plaintiff's MS diagnosis in 2006.  Nurse Burge unequivocally stated in her deposition that she changed the date from 06 to 09 after she "realized I had the wrong date." Doc. 57, p. 582. Burge further testified that she could not have signed the note using the surname Burge in February 2006 because that is her married name and she was not married until July 2006.  *Id.* at p. 583.   In addition, plaintiff began her 40-hour restriction in 2008, meaning that restriction could not have been revived in 2006.  Finally, plaintiff could not have been referred to as an EE (employee) in February 2006 because she had not been hired by defendant on that date.

Against that compelling evidence, plaintiff only argues that "maybe" she went to defendant's medical facility when she submitted a resume to defendant in January or February 2006 because "it would make since [sic] that she went to the health facility when she turned in her resume."  Doc. 90, p. 1905.  Plaintiff also states that she "might have been seen at AK Steel[']s Health Facility in (7th month) when she was hired in."  *Id.*  Such vague and indefinite

9

statements are insufficient to raise a genuine issue of material fact, unlike the clear and definite testimony of Nurse Burge.

The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff's argument that the note written by Nurse Burge supports a conclusion that she told defendant of her MS prior to being hired is so blatantly contradicted by the record that the Court cannot reasonably rely upon it.[4] Defendant is entitled to summary judgment on this cause of action.

**G. Plaintiff Not Entitled to Relief for Claim of Having Worked In Excess of 40 Hours Per Week**

It is not per se illegal to require an employee to work overtime and plaintiff has not alleged that she was not paid for any overtime hours she worked. It is unclear, therefore, which laws plaintiff believes that defendant violated by allegedly requiring her to work over forty hours per week.

Even if it is assumed (solely for purposes of argument) that plaintiff has stated a cognizable cause of action, defendant is entitled to summary judgment. The restriction on plaintiff's work hours discussed by the parties is the note written by a chiropractor on December 22, 2008 limiting plaintiff to forty hours per week until January 22, 2009. Doc. 88-2, p. 1832. Dr. John Rutan's assertion that plaintiff did not submit that note to defendant until December 25,

---

[4]Plaintiff argues at length that Nurse Burge failed to follow proper nursing procedures when she changed the date on the document. The Court need not decide this issue because Nurse Burge's alleged failure to follow proper protocol when making the change is irrelevant to any substantive issue in this action.

2008 is uncontradicted. Doc. 91-3, p. 2011. Plaintiff has submitted documents purporting to show that she worked eight hours of overtime the week of December 21-27, 2008. Doc. 90-1, p. 1983. However, plaintiff has not shown with specificity that she accrued the overtime hours after she presented the chiropractor's note to defendant on December 25, 2008. To the contrary, at her deposition plaintiff testified that defendant honored the chiropractor's note imposing a forty-hour workweek on plaintiff. Doc. 88, p. 1752. Defendant is entitled to summary judgment on this claim.[5]

**H. No Adverse Employment Action Was Taken Against Plaintiff Stemming from Her Having Taken FMLA Leave**

In its entirety, plaintiff's final cause of action is that "[a]fter returning from FMLA [leave], I was demoted with lower pay followed by termination[.]" Doc. 4, p. 18. The Court construes plaintiff's cause of action as being for FMLA retaliation.

In December 2008, defendant granted plaintiff's request for a two-week leave of absence. Plaintiff contended at her deposition that when she returned from that leave she "just could tell that the -- that management was mad at me over it. It was like because -- because it's so understaffed there, that they literally need everybody there to make it work. And when I took off work, it threw a wrench in their -- whatever they're doing." Doc. 88, p. 1740.

The Sixth Circuit has held that a plaintiff seeking to establish an FMLA discrimination or

---

[5] Plaintiff has submitted a printout of a newspaper article dated October 6, 2010 from the *Dayton Daily News*. Doc. 90-1, p. 1985-1987. That article generally recites that the United States Occupational Safety and Health Administration has cited defendant for safety violations. Plaintiff is not mentioned in the article and defendant's alleged commission of safety violations is irrelevant to the case at hand. Similarly, plaintiff's allegation that defendant allegedly made her work with cranes, in violation of a doctor's note, is not properly before the court. Doc. 90, p. 1911. Plaintiff attempted to add a cause of action involving her purportedly being required to work with cranes and other equipment contrary to doctor's orders [Doc. 46, p. 314-315] but the Court denied plaintiff's motion for leave to amend her complaint. Doc. 47.

retaliation claim must show that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). If the first three elements have been satisfied, plaintiff "bears the burden of demonstrating a causal connection" and "must show that the employer's stated reason for terminating her was pretextual and that the true reason for her dismissal was her medical leave." *Id.*

Defendant is entitled to summary judgment even if the Court assumes, solely for purposes of argument, that the first three elements have been satisfied. Plaintiff has not established any type of causal connection between her two-week leave and her demotion and/or termination.

As to the demotion, the Court construes the claim to be that plaintiff was required to work at a pump tender position upon her return, which she claims to be a demotion from working the water systems operator position. According to Morris' declaration, the Union filed a grievance in December 2008 complaining "about the Energy Department using maintenance employees to fill the pump tender position. The Union claimed that production employees in the Energy Department, like [plaintiff], should be filling those positions." Doc. 89-1, p. 1879. Accordingly, plaintiff was assigned to staff a pump tender position for a week or two because a more senior employee filled the higher paying water systems operator position. *Id.* Morris avers that defendant's assigning plaintiff to the pump tender position was not based on her having taken a two-week leave and that plaintiff's lack of seniority meant that she "would have been

12

assigned to this work assignment regardless of whether she took leave." *Id.* at p. 1880. Plaintiff has not demonstrated pretext in defendant's stated reason for temporarily assigning her to the pump tender position.

As to plaintiff's claim that she was terminated in retaliation for having taken leave, plaintiff has also not demonstrated pretext in defendant's consistent assertion that plaintiff was terminated for providing false answers on her employment application documents. Indeed, Morris–who made the decision to terminate plaintiff–specifically averred in her declaration that she "did not know about [plaintiff's] two-week leave of absence when I [Morris] made the decision to terminate her employment." *Id.* at p. 1882. Defendant is entitled to summary judgment.

### I. Plaintiff's Construed Motion to Strike Is Denied

Attached as an exhibit to defendant's response to plaintiff's motion for summary judgment was a second declaration of Dr. Rutan. Doc. 91-3. Plaintiff has filed an "objection" to defendant's submission of Dr. Rutan's declarations because "[p]laintiff **never received** a notice of deposition for Dr. Rutan. Plaintiff had **not** received a notice for a list of witnesses from Defendant AK Steel showing anyone to testify." Doc. 92, p. 2014 (emphasis original). The Court will construe plaintiff's objection as a motion to strike Dr. Rutan's declarations.

In response to plaintiff's construed motion, defendant submitted a copy of its initial disclosures to plaintiff. Those disclosures list Dr. Rutan as being someone "likely to have discoverable information that Defendant may use to support its defenses." Doc. 94-1, p. 2022. At the end of that document is a certification by defendant's counsel that the initial disclosures were mailed to plaintiff on October 28, 2010. *Id.* at p. 2024.

"[A] letter mailed properly creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed . . . ." *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 430 (6th Cir. 2007) (citation and internal quotation marks omitted). This Court has noted that the presumption "may be rebutted with evidence of non-receipt" but "a bald denial of receipt, without more, is insufficient." *Webb v. Chase Manhattan Mortgage Corp.*, 2008 WL 2230696, at *18 (S.D. Ohio May 28, 2008). Plaintiff's "bald denial" that she received the documents is insufficient to overcome the presumption that she received the initial disclosures.

In addition, although not mentioned by the parties, the record reflects that plaintiff was otherwise made aware of Dr. Rutan's potentially important role in this case no later than November 29, 2010. Attached as an exhibit to plaintiff's "Motion for the Court to order the Defendant to comply with the Rules of Discovery of rule 34" [Doc. 21] is defendant's objections and responses to plaintiff's first set of interrogatories and requests for documentation. Doc. 21-4, p. 131. Plaintiff's request number four asked defendant in relevant part to "[p]rovide all information including AK salary, private practice, on all physicians who have worked or are working for AK Steel, Middletown facility since January 2006 until the present." *Id.* at p. 133. After objecting on relevancy and vagueness grounds, defendant responded in relevant part: "Dr. John Rutan is the primary physician to work at the Middletown Works since January, [sic] 2006. Dr. Rutan is not an employee of AK Steel and did not receive a salary from AK Steel." *Id.* at p. 134. Plaintiff, therefore, had ample and timely notice of Dr. Rutan's role in this case separate from his having been listed on defendant's initial disclosures.

**III. Conclusion**

For the foregoing reasons, it is **ORDERED**:

1. Plaintiff's motion for summary judgment [Doc. 90] is **denied**; and

2. Defendant's motion for summary judgment [Doc. 89] is **granted**; and

3. Plaintiff's construed motion to strike the declarations of Dr. Rutan [Doc. 92] is **denied**; and

4. A separate judgment will be issued herewith.

This the 6th day of October, 2011.

        s/ J. Gregory Wehrman
        J. Gregory Wehrman
        United States Magistrate Judge